EL PASO ELECTRIC RY. CO. v. COWAN.
(No. 1414.)

(Court of Civil Appeals of Texas. El Paso.
Feb. 15, 1923.)

1. Release 17(2)—Release of claim signed on false representations held not binding.

In an action by a lineman against his employer for personal injuries, a release, which, according to special findings, was made in reliance on false representations by defendant's physician that plaintiff's injuries were not serious or permanent, though made in good faith without intent that they be acted upon, where defendant's claim agent knew of the representation to be false when the release was signed, was not binding.

2. Witnesses 240(4) — Question held improper as leading witness.

In an action by an employee against his employer for personal injuries, defended on the ground of a settlement and release, which plaintiff claimed had been signed through false representations by defendant's physician as to plaintiff's health, and by defendant's claim agent that plaintiff would be given employment again when able to work, where, by a succession of suggestive questions to plaintiff as a witness he was led up to the desired answer to a question as to whether he would have signed the release if he had known that his injuries were serious, and he would not be as well as he ever was, and would not be able to work by a certain date, a negative answer to which brought plaintiff's case within rules of law allowing a recovery, the question was improper as leading.

3. Witnesses 405(1)—Exclusion of testimony as to injury to spine in action for injury to hip and ankle, not error.

In an action by an employee against his employer for injuries to the employee's hip and ankle, exclusion of testimony of a witness to contradict testimony by another witness as to how the employee's spine was injured in another accident was not error; the matter excluded being collateral and immaterial.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by W. A. Cowan against the El Paso Electric Railway Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Goggin, Hunter & Brown, of El Paso, for appellant.
Wallace & Cameron, of El Paso, for appellee.

HARPER, C. J. [1] This was an action in the court below by the appellee, Cowan, against the appellant, El Paso Electric Railway Company, a corporation, for personal injuries sustained while in its service as a lineman. He alleged that, while engaged with others in cutting an overhead trolley wire and standing upon the platform of one of the company's tower wagons holding to the wire, the wire was suddenly severed, and he was caused to fall. That in order to save himself he caught a bar, which held together the railings of the platform of the wagon, but that this bar gave way, or turned in his hand, and he fell to the ground and was seriously injured. He alleged that his fall to the ground and his injuries were caused by the company's having negligently failed to have the eyebolt holding the bar, or safety rail, properly fastened and screwed up, or its failure to have same secured by a cotter key. He claims this rail or bar was a "safety rail," intended to protect employees on the tower wagon from falling.

The defendant answered by a general denial and plea of contributory negligence, and specially pleaded a settlement and written release duly executed and delivered by the plaintiff. To this plaintiff by a supplemental petition replied that the purported release was null and void because obtained through false representations made by defendant's physician, Dr. Stevens, to the effect that he (plaintiff) was not permanently injured, and would be well enough to go back to work by July 31, 1921, and that the physician advised him to settle. He further alleged that the settlement thereafter made through the defendant's claim agent, Brann, was made after the claim agent had been advised of what the doctor had said, and had confirmed the doctor's statement, promising to take him back into the company's employ upon his recovery. He alleged that he believed in and relied upon this promise, but that the company had repudiated the same, alleging that his injuries were still existent and permanent.

The case was submitted to the jury on special issues, and the court, upon the answers returned, entered a judgment for the plaintiff in the sum of $1,500, with interest and costs, and thereafter the appeal was duly perfected.

The first five propositions are predicated upon the validity and binding effect of the settlement and release. These propositions are disposed of by the following findings of the jury if the evidence is sufficient to support them: (1) They find that the company's physician represented to the plaintiff, just prior to the signing of the release, that the injuries to plaintiff were not serious or permanent, and that plaintiff would be as well as he ever was, and able to go to work by July 31, 1921; (2) that these representations were false; (3) that plaintiff believed them and relied on them in executing the release. The whole of appellant's contentions is summed up in a statement in its brief, as follows:

"A false statement as to a patient's present condition is treated by the courts as a statement of fact, but one made as to a patient's future condition is essentially an expression of opinion or prediction as to the future. The first may be the basis for a charge of fraud, but the second may not."

The petition charges and the court finds that the physician stated that the plaintiff was not (then) seriously or permanently injured. This is a statement as to the plaintiff's present condition, relied upon, to the extent of being induced thereby to sign the release, and the jury have found that the statement was false. And there is testimony sufficient to support the findings. That the representations were made in good faith, or whether the claim agent acted in good faith at the time he paid the compromise sum and took the release of future claims, is immaterial. Houston & T. C. R. Co. v. Brown (Tex. Civ. App.) 69 S. W. 651; Alenkowsky v. Texas & N. O. R. Co. (Tex. Civ App.) 188 S. W. 956. Innocent misrepresentations of an existing fact which induce a party to act to his disadvantage are the basis of relief as well as if they had been intentionally made. Pendarvis v. Gray, 41 Tex. 329. So it was not error to refuse special charge requested by appellant to that effect.

Appellant invokes the rule that a false representation by a railway surgeon as to the physical condition of an injured party will not justify the avoidance of a release of damages, where the surgeon had no connection with the settlement, and the claim agent was ignorant that such representations had been made. The jury made a finding to the effect that the physician and claim agent did not act together in procuring the release. However, they made the following findings:

"Question No. 1: Do you find from a preponderance of the evidence that Dr. B. F. Stevens represented to plaintiff, just prior to the signing of the release introduced in evidence, that the injuries of plaintiff were not serious or permanent, and that plaintiff would be as well as he ever was and able to go to work by July 31, 1921? Answer 'Yes' or 'No.' Answer: Yes.

"If you answer the foregoing question in the affirmative, then, but not otherwise, answer this additional question: Question No. 2: Was such representation, if same was made, true or false? Answer by the use of the word 'False' or 'True,' as you find from the evidence. Answer 'False' if you find same was false from a preponderance of the evidence, otherwise answer same 'True.' Answer: False.

"If you have answered question No. 1 in the affirmative, and question No. 2 by the use of the word 'False,' then, but not otherwise, answer this additional question: Question No. 3: Did plaintiff, at the time of executing such release, believe such false representation, if same was made and was false, and rely thereon in executing the release? Answer: 'Yes' or 'No.' Answer: Yes.

"Question No. 4: Do you find from a preponderance of the evidence that, at the time of obtaining said release, Charles Brann, the claim agent of defendant, knew that such false representation had been made by said Dr. B. F. Stevens, if same was made and same was false, and that plaintiff believed and relied thereon? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 5: Do you find from a preponderance of the evidence that such false representation, if same was made and same false, was a material inducement to plaintiff in the execution of the release in question? Answer 'Yes' or 'No.' Answer: Yes."

The first finding is that the representations were made by the physician just prior to the signing of the release, and the fourth is that the claim agent knew of the false representations at the time. True, the physician was not present at the time, but it would seem that these findings as a whole required the cancellation of the release. M., K. & T. Ry. Co. v. Ellison (Tex. Civ. App.) 185 S. W. 1020.

We conclude that it was not error to refuse to submit the question, Did the physician make the representations for the purpose of inducing the plaintiff to enter into a compromise settlement? because the findings are sufficient to require judgment for plaintiff, even though it be a fact that the physician had no such purpose in making the statements.

[2] The following question is attacked as leading:

"I will ask you to state whether or not, if you had known that your injuries were serious and you would not be well as you ever were and able to work by the 1st of July, 31st of July, you would have executed this release."

In I. & G. N. Ry. Co. v. Dalwigh, 92 Tex. 655, 51 S. W. 500, in discussing leading questions, the Supreme Court, through Gaines, Chief Justice, said:

"The rule has, however, been so modified by this court, so as to hold that a question is not necessarily leading because it admits of a direct affirmative or negative answer, but that to make it objectionable when but a single fact is sought to be elicited it must also suggest the desired answer."

Appellee relies upon this quoted test. That the vice in the question may be fully portrayed we quote the bill of exceptions, as follows:

"Q. Now I will ask you to state what, if anything, induced you to sign this release? A. That I wanted to make the trip to Tennessee, and that I would have my job back when I was able to go to work, when I returned.

"Q. Anything else?

"Judge Goggin: We object to counsel leading the witness.

"The Court: Overrule the objection.

"Q. State to the jury why you signed this release. A. So I would have money to make

the trip on and money to take care of my family.

"Q. I will ask whether or not you relied on the statement of Dr. Stevens—

"Mr. Brown: We object, before he finishes; it is improper.

"The Court: I can hardly tell, I didn't hear the question.

"Judge Goggin: I think there was enough for the court to have seen it was leading.

"The Court: Go ahead and propound the question, but if you propound it in a leading form, you won't interrogate him along that line further.

"Q. I will ask you to state whether or not—state again, in detail, why you signed this release, what induced you to sign it? A. I relied upon Dr. Stevens' statement that I would be as well as I ever was and able to go to work by July 31st, and on Mr. Brann's statement that I would have my job when I came back and was able to go to work.

"Q. I will ask whether or not, if you had known—

"Judge Goggin: It is manifest that is going to be leading. The other was a question he has repeated time and time again, until it became leading. Now he is manifestly going to ask a leading question.

"Q. I will ask you to state whether or not, if you had known that your injuries were serious—

"Judge Goggin: We except.

"Q. And you would not be as well as you ever were and able to go to work by the 1st of July, the 31st of July, you would have executed this release?

"Mr. Brown: We object to that.

"The Court: Your ground is it is leading?

"Mr. Brown: Yes, sir; and we except to the asking of the question itself.

"The Court: Overrule the objection. (Exception.)

"A. No, sir; I wouldn't have signed it if I had known I wouldn't have been well and wouldn't have been permitted to go to work.

"Q. State whether or not you relied upon what Mr. Brann had told you, as well as the doctor? A. Yes, sir.

"Mr. Brown: The same objection and exception.

"The Court: All right; it will be overruled. Go ahead."

It seems clear that by a succession of suggestive questions the witness was led up to the desired answer, and then by the question quoted in the assignment all the different elements composing plaintiff's charge of fraud in obtaining the compromise and release are combined, and by the simple answer "No" the plaintiff has brought his case within the rules of law which enabled the jury to find in his favor upon this issue, and without which the jury would not have been justified in their findings. So it is not a case where a single fact was sought to be elicited by the question, but three ultimate and controlling facts were called for, and, if in fact the answer was not suggested by the last question, by all the preceding questions they clearly had been, so as to prepare the witness for the final one made the basis of the assignment. For this reason the case must be reversed for a new trial.

[3] Upon cross-examination witness Mrs. Bavonsett denied that she had stated to a Mrs. Evans that plaintiff, while riding a horse in Tennessee, had suffered an injury to his spine by falling from the horse. Defendant placed Mrs. Evans on the witness stand to contradict the witness by testimony that she made the statement. The court sustained an objection to the question; this is assigned as error. This was not error, because the witness would have testified that he said he had such an accident, and that his spine was injured in some way. The injury in the instant case is to the hip and ankle, so the matter was collateral and immaterial. Dooley v. Boiders (Tex. Civ. App.) 128 S. W. 690.

The next and last proposition is:

"The proximate cause of plaintiff's injuries was not the fact, if a fact, that the eyebolt securing the cross-bar was insecurely fastened, or because of the absence of a cotter key or nut, but the failure of the plaintiff to release his hold on the wire when severed, thus allowing himself to be thrown to the ground by the weight of the wire."

This is a question of fact about which, in view of another trial, we express no opinion.

Reversed and remanded.