**EL PASO ELECTRIC RY. CO. v. COWAN.***
(No. 1539.)

(Court of Civil Appeals of Texas. El Paso. Jan. 10, 1924. Rehearing Denied. Jan. 31, 1924.)

1. New trial ⚖══44(3)—No abuse of discretion in refusal of new trial for jury's alleged misconduct in discussing matters not in issue.

In personal injury action, trial court's refusal of new trial for jury's alleged misconduct in discussing percentage of judgment plaintiff's attorneys would receive, and possibility of defendant's being indemnified by insurance, neither of which was in issue, held not an abuse of discretion.

2. Master and servant ⚖══286(18)—Negligence in failing to keep guard rail on platform of tower wagon safe held for jury.

In action by a lineman for injuries received in a fall from an elevated platform, evidence as to whether employer was negligent in failing to use a cotter key to prevent eyebolt from being pulled out, thereby releasing the bolt and allowing a guard bar to fall, held sufficient for jury.

3. Master and servant ⚖══295(7)—Instruction on continuing work after knowledge of defect held properly refused.

In action by a lineman for injuries received in a fall from an elevated platform, where there was no plea presenting issue whether a person of ordinary care would have continued in service with knowledge of defect and danger and instruction as to risks ordinarily incident to employment was given, refusal of instruction as to continuing in service with knowledge of the defect was not error, though Rev. St. art. 6645, does not impair the common-law effect of assumed risk, as a defense.

4. Release ⚖══17(2)—Release of claim for personal injury not voided for alleged fraud of defendant's physician.

Where release was induced by false representations of defendant's physician that plaintiff's injuries were not serious or permanent and that settlement could be made by plaintiff on that basis, but it was not made to appear that the physician's opinion was made to bring about a settlement and release, nor that he knew that his opinion was false when made nor that defendant's claim agent, though knowing the character of the advice given, knew that it was false, such facts were not sufficient to avoid release for fraud.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by W. A. Cowan against the El Paso Electric Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Goggin, Hunter & Brown, of El Paso, for appellant.

Wallace & Cameron, of El Paso, for appellee.

WALTHALL, J. This is the second appeal of this case to this court. The disposition we made of the case on the first appeal is found in 248 S. W. 442, where some of the matters there presented and discussed are found in the present record.

The action is brought by appellee, W. A. Cowan, against the appellant, El Paso Electric Railway Company, to recover damages for personal injuries sustained while in its service as a lineman.

Appellee alleged that while engaged in cut-

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 19, 1924.

ting an overhead trolly wire and standing upon the elevated platform of the appellant's tower wagon, holding to the overhead trolly wire, the trolly being suddenly severed by a fellow workman, he (Cowan) was thrown or caused to fall to the ground and seriously injured. The appellee alleged that when the wire to which he was holding was severed by his fellow workman, that portion which he held to fell to the ground, pulling him toward the rear of the elevated platform on which he stood; that he lost his balance, and in attempting to save himself from falling from the platform to the ground caught hold with his hands of the bar or "guard rail" at the rear of the platform; that one end of the guard rail or bar became unhooked and gave way under his weight, allowing him to fall to the ground. The bar or guard rail mentioned was of wood reinforced by iron with a hook at each end; there were slatted railings at each side of the platform fixed by hinges, which were raised when the platform was in use, coming to a little above the knee of a man of ordinary size standing upon the platform. These slatted railings were held in place after having been raised by the guard rail mentioned, the hooks in the ends of the guard rail being dropped into eyebolts fastened at the rear ends and upper part of the slatted railings. Cowan claimed this connecting bar or rail was intended to protect persons against falling from the platform, and alleged that the bar came loose because the eyebolts into the eyes of which the hooks in the ends of the bar were inserted were not tightly screwed up, and in consequence, when the appellee caught hold of the bar in trying to break his fall, the eyebolts and the bar turned, thus allowing the hook at one end of the bar to drop out and down. He also alleged that the hooks at the end of the bar should have been securely held in the eyes of the eyebolts by cotter keys or by nuts, and that had they been so fastened when, in his fall, he caught hold of the bar, it would have remained fast and he would have held to it and not have fallen to the ground.

The El Paso Electric Railway Company answered by a general denial and by plea of contributory negligence, and also pleaded accord and satisfaction, setting up a written release duly executed by Cowan; to which Cowan replied that the release was void because the street railway company's physician had induced him to settle and execute the release by falsely representing to him that he would be well and able to go back to work for the railway company by a certain definite time, and that he had also been induced to execute the release through promises made by the street railway company's claim agent that he would be re-employed by the company upon his recovery.

The cause was submitted to the jury on special issues. The jury in response to the special issues found that the hooks should have been secured in the eyebolts by cotter key or nut; that Cowan was not guilty of contributory negligence, and that he did not assume the risk; that he had been damaged to the extent of $10,000, the amount already paid him on settlement to be deducted therefrom; that the company's physician represented to the plaintiff just prior to the signing of the release that plaintiff's injuries were not serious or permanent and that plaintiff would be as well as ever and ready to go to work by July 31, 1921; that this representation was false; that the plaintiff believed in and relied upon the representation; that at the time of the making of the settlement the claim agent knew that this representation had been made by the doctor, and that plaintiff relied upon it; that the claim agent did not know that the representation was false at the time of the settlement and release; that Dr. Stevens and the claim agent, Brann, did not act together in procuring the release from the plaintiff or for the purpose of procuring the release: that the eyebolts holding the crossbar was securely fastened. The court on the jury's verdict entered a judgment for the plaintiff for $9,384.00 and costs.

When the appellant's motion for a new trial was heard, the appellee having entered a remittitur of $3,000 which had been required by the court, the motion was overruled, and the appellant gave notice of appeal and afterwards duly perfected its appeal to this court.

### Opinion.

[1] While deliberating upon the case, several members of the jury referred to the portion or percentage of the amount of the judgment appellee's attorneys would receive for their services; also, the jurymen referred to, and to some extent discussed, the possibility of the company's being indemnified by insurance against loss. Neither of the above matters discussed formed any part of the issues or evidence on the trial.

By several propositions, appellant insists that such reference or discussions by the jury were calculated to and probably did influence the amount of the verdict, which appellant insists is excessive; was necessarily improper and prejudicial as inducing the jury's finding on the issues of negligence and contributory negligence. The full testimony of about eight of the jurymen as to what was said by the jurymen, in the references or discussions of the attorney's fee and indemnity insurance, as above, and the effect of such discussions on the verdict, are copied into appellant's brief, covering some 18 pages thereof. The view we entertain on the controlling question on the merits of the controversy relieves us from an extended discussion of the propositions directed to the misconduct of the jury.

If, as some of the jurors said, the refer-

ences to the attorney fee and insurance were not mentioned until after the verdict was agreed upon, the references might not be material. Every juror who testified and heard any reference to either said bare mention was made of the attorney fee and insurance, and each said his verdict was not affected by the references. The trial court filed no findings of fact upon the motion, but heard all the evidence offered, and evidently thoroughly considered it.

The record as presented does not in our judgment show an abuse of the discretion given trial courts in passing upon motions for new trial on the ground of misconduct of jurors.

[2] It is insisted by appellant that the evidence is not sufficient to sustain the jury's findings of negligence in failing to secure the hook of the crossbar in the eye of the eyebolt with a nut or cotter key. The evidence showing in detail the use of the several safety appliances in connection with the use of the trolly tower is lengthy, and in the absence of the appliances themselves we may not in a brief statement accurately and fully state the facts relied upon to show the facts at issue. As we understand it, the evidence shows that one of the hooks at the end of one of the crossbars came out of the eyebolt, thus allowing the bar to fall when Cowan was thrown or fell against it. Cowan was on the trolly wagon at the time the accident assisting in cutting down a trolly wire. It seems that Cowan on the trolly tower was holding a wire, while another man was cutting the wire, and when the wire was cut Cowan was to throw the wire clear of the tower wagon to avoid a short circuit, or to avoid the wire falling on anybody, a safety method. When the wire was cut, the sudden jerk and heavy strain on the wire caused Cowan to lose his balance, and, in falling, he fell on the tail rail or bar which turned in his hand, when he fell to the ground. The object of the railing is a safety device. When Cowan fell, the eyebolt being loose pulled out and let the crossbar turn and drop down. The evidence tends to show that if there had been a cotter key to fasten the iron bar in the eyebolt, the crossbar would not have turned and dropped. The jury in answer to questions 6, 7, and 8 found that the eyebolt holding the crossbar was securely fastened and that the appellant was not negligent in that respect; but in answer to questions 9 and 10 found negligence in the failure to use a cotter key on the pin which went through the eyebolt to prevent the pin being pulled out. Without stating the evidence more fully than as above, we have concluded that the evidence warranted the submission of the issue to the jury as to negligence as indicated in questions 9 and 10, above.

[3] The appellant requested the submission as to whether "a person of ordinary care would have continued in the service of the company with the knowledge of the defect or damage, which the plaintiff claims to have caused the injury," that is, the absence of the cotter key on the pin, and the failure to submit the requested issue is complained of. Appellant refers us to section 2, art. 6645, of the Revised Statutes. That article of the statute was amended by chapter 100, p. 195, General Laws 37th Legislature (Vernon's Ann. Civ. St. Supp. 1922, art. 6645).

Appellee suggests that by reason of "the present statutes" the issue of assumed risk as requested is eliminated; but the present amendment of the statute, as above, was not effective at the time of the accident causing appellee's injuries.

The court submitted the issue of assumed risk, ordinarily incident to appellee's employment.

Article 6645, while it modified the common-law rule of assumed risk, the common-law effect of assumed risk as a defense has not been impaired. The article invoked has reference to situations where there is a defect in the appliance which the employee is required to use in the performance of his duty or in the surrounding conditions which affect his safety while at work. Swann v. Texas & P. Ry. Co. (Tex. Civ. App.) 200 S. W. 1131.

The question of fact involved in the contention was whether Cowan knew of the absence of the cotter key on the pin and the danger in the use of the tower wagon in the absence of the pin, and whether a person of ordinary prudence with such knowledge would have remained in the service of the company.

Appellant pleaded that the danger to Cowan from the use of the tower wagon was one of ordinary incident to his employment, and that he assumed the risk of any danger therefrom. There is no plea presenting the issue as to whether a person of ordinary care would have continued in the service with the knowledge of the defect and danger in the use of the tower wagon in the absence of the cotter key, and we think the court submitted the only issue of fact as to assumed risk tendered by the appellant's pleading.

[4] By the remaining propositions it is insisted that for a valuable consideration appellee in writing compromised and released his cause of action. Appellee admitted the signing of the release, but pleaded that same was procured by false and fraudulent representations of Dr. Stevens, the company's doctor, who had attended him in his injuries; that his injuries were not serious and permanent but only temporary; that he would be as well as ever he was and be able to go to work by July 31, 1921, and that in executing the release appellee relied and acted upon the representations of said doctor as being true.

Without quoting the evidence, it appears without contradiction in the evidence that

when appellee was injured he was taken to the hospital for treatment and Dr. Stevens attended him for the appellant company. Appellee had no doctor of his own selection during his confinement of some five of six weeks in the hospital. According to the testimony of appellee, he was under the care of Dr. Stevens, constantly advising with him as to his injuries and the extent of them, from the time of his injuries until about the 7th day of June following his accident on the 29th day of April, 1921.

Appellee testified that about the 7th or 8th of June, for reasons we need not state, he was contemplating settling his claim with the company and so advised Dr. Stevens and asked the doctor what he thought about it; to which the doctor replied:

"You can safely settle on what I told you heretofore; you will be as well on July 31st as well as you ever were."

Appellee further testified that in making his settlement with appellant's claim agent he then asked the claim agent whether he had talked with Dr. Stevens, when the claim agent replied that he had not but would, and then called the doctor over the telephone, and, on inquiry of appellee as to the doctor's statement of his condition, told appellee what the doctor said. Dr. Stevens did not recall the call over the telephone, but said if the claim agent called he told him the same as he did appellee. The claim agent denied any conversation with Dr. Stevens at or near the time of the settlement. Appellee and the claim agent then agreed on the basis of settlement, and on the 9th day of June, 1921, the release was executed fully releasing appellant from all claim for damages.

We have made the above brief statement solely in view of appellant's several contentions that at the time of the settlement Dr. Stevens was not acting for nor was he the agent of the company in any sense; that to avoid the release appellee under his pleading must prove fraud in its procurement either actual or constructive; that the advice of Dr. Stevens to appellee was an opinion and that appellant cannot be held responsible if the opinion proved false, unless at the time of the settlement the company knew of the advice and knew it to be false, or had reasonable grounds to so believe.

The question of whether Dr. Stevens was the company's physician in attending on appellee at the time of his injury, and until the release was executed, can hardly be questioned. The fact that he was compensated for his services by the case and not on a salary would be immaterial. The question as to whether he represented the company as its physician in charge of appellee during appellee's stay in the hospital and afterwards cannot be questioned in view of the evidence; but other than being the company's physician in charge of Cowan's case, we agree with appellant that Dr. Stevens was in no sense the company's agent. The evidence does not disclose when Cowan was discharged from the physician's care.

In the case of Gulf, C. & Santa Fé Ry. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669, the physician in charge did not know, when he made the statement to Huyett as to his condition, that a settlement was then being discussed, nor did the claim agent know of the statement made by the doctor to Huyett. It cannot be said in this case as in the Huyett Case that the representations relied on to avoid the release were not made pending the transaction in which the settlement was made. True, here, as there, Dr. Stevens took no part as physician or agent in making the settlement and was not present and acting with the claim agent in making the settlement; but according to the evidence of Cowan, he knew of the pending settlement and advised Cowan as to his condition at the time of the contemplated settlement, and the terms of the settlement, on Cowan's side at least, were based on the advice given. True, there was no direct evidence that Dr. Stevens was authorized by appellant, or that it was a part of his duty as surgeon in the case, to give information in the case either to Cowan, or the claim agent, as to Cowan's condition; but as said by Judge Story in his work on Agency, § 135, and quoted with approval by Judge Williams in the Huyett Case:

"If the agent, at the time of the contract, makes any representation, * * * touching the matter of the contract, it is treated as the representation, * * * of the principal."

Here the jury found that the alleged representations were made, and that they were false, but found that the claim agent did not know at the time of the settlement of the falsity of the representations, and did not act together with Dr. Stevens in making the settlement. It is difficult to harmonize findings 1 and special findings No. 2 in which it was found that the doctor and the claim agent were not acting together in procuring the release. It is not claimed that Dr. Stevens was present and taking part with either Cowan or the claim agent at the time of the settlement or any part of it, or advised either as to the settlement. In order to set aside the release for the fraud charged in making false representations as to Cowan's condition, it must appear that the claim agent and Dr. Stevens acted together in some use made of the advice or representation of the doctor as to the condition of Cowan, made at the very time of the settlement, or so near thereto as to be a part of it, or, as here, in the absence of the doctor, that both Cowan and the claim agent in making the settlement had in mind the advice given, and that the claim agent then knew or had reason to believe that the advice given was false and that Cowan thought it was true, and the claim agent used the physician's advice either to

Cowan or himself, to deceive Cowan as to his real condition in order that an advantageous settlement might be made. In other words, in order for the claim agent and Dr. Stevens to be acting together in the matter of the settlement in the absence of the doctor at the time and place of settlement, and taking no part in the settlement, it must appear that Dr. Stevens gave the advice to Cowan for the purpose of bringing about the release; that the claim agent knew what advice the doctor had then given, and that it was false, and made use of the advice in effecting the settlement. A material difference is observed in the finding of the jury on the former trial, and this as to the knowledge of the falsity of the advice by the physician on the part of the agent in making the settlement.

While it is the duty of the physician, when he gives advice as to the condition of the patient, to give his honest medical opinion, yet where it is not made to appear that the opinion given was made for the purpose of bringing about a release, and it is not made to appear that the physician knew the statement to be false when made, though it afterwards developed that the advice given was not a true condition of the patient's injuries, and where it is not made to appear that the claim agent, though knowing the character of the advice given, did not know it to be false and not a true statement of the real condition of the patient's injuries, such condition of facts would not, in our opinion, be sufficient to avoid the release on the ground of fraud. El Paso & S. W. Ry Co. v. Kramer (Tex. Civ. App.) 141 S. W. 122; Chicago, R. I. & G. R. Co. v. Taylor (Tex. Civ. App.) 203 S. W. 90; Gulf, C. & S. F. Ry. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669; San Antonio & A. P. Ry. Co. v. Polka et al. (Tex. Civ. App.) 124 S. W. 226; Houston & T. C. Ry. Co. v. McCarty, 94 Tex. 298, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854.

For reasons stated, the case is reversed and here rendered.

HARPER, C. J. (concurring). I agree that this case should be reversed and rendered under propositions X, XI, XII, XIII, and XIV.

The thirteenth proposition clearly presents my views, viz.:

"If Dr. Stevens was not acting as the agent of the company when he was approached by Cowan and in response to his request gave him an opinion as to his condition and probable recovery, the company cannot be held responsible because Dr. Stevens' advice proved false; unless at the time of the settlement the company knew of the advice and knew it to be false, or had reasonable ground to believe it so. The jury having found that the company's claim agent did not know at the time of the settlement that Dr. Stevens' representations were

false, and further found that Dr. Stevens and the claim agent were not acting together in making a settlement, or for the purpose of procuring the same, the company cannot be charged with fraud, either actual or constructive, and the release must be sustained."

The plaintiff pleaded:

"Plaintiff went to defendant's physician, Dr. Stevens, who was employed by the defendant to treat this plaintiff."

No allegation that Dr. Stevens was the agent of defendant for any other purpose, and the uncontradicted evidence is that he was employed to treat plaintiff for his injuries and not under salary, but was paid for the work he did, and that the treatment had ceased when he expressed the opinion that plaintiff would recover.

Under these facts, the physician was not such an agent of the company as that his statements would bind the company unless the claim agent knew of them and that they were false at the time the release was executed, and the jury have found that the latter did not know them to be false, and there is no charge nor evidence that the claim agent and the physician acted in collusion for the purpose of effecting such settlement. Gulf, C. & S. F. Ry. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669.