**SOUTHWESTERN BELL TELEPHONE CO.**
**v. FERRIS.**
No. 11762.

Court of Civil Appeals of Texas. Dallas.
Nov. 16, 1935.

Rehearing Denied Dec. 21, 1935.

230

John H. Bickett, Jr., C. C. English, C. M. Means, and Phillips & Phillips, all of Dallas, for appellant.

R. G. Storey and Knox W. Sherrill, both of Dallas, for appellee.

LOONEY, Justice.

Mrs. Eula Ferris, widow 49 years of age, with a life expectancy of 21.63 years when injured, brought this suit against the Southwestern Bell Telephone Company to recover damages for injuries, sustained near the town of Elm Mott, McLennon county, Tex., in a collision between an automobile in which she was a guest, driven by Mr. Claude McKinney, and another automobile driven by Mr. Sanc W. God-bold, an employee of, and at the time on a business mission for, defendant company.

The injuries sustained by plaintiff, as alleged, and as we think substantially proven, are these: (a) An open, incised, and somewhat ragged wound upon· her head, extending from near the margin of the left eye toward the forehead and ending at approximately the center of the top of the scalp; (b) a massive contused wound of both hips, more extensive on the left hip, and extending to within about three inches of the knee; (c) a contused wound of the right leg on the interior surface of the tibia; (d) a fracture of the bone of the right leg extending into the knee joint; (e) a contused wound of the anterior surface of the chest; (f) a fracture of the sacrum just above the coccyx bone; (g) a permanent scar was left upon her forehead, visible and disfiguring; (h) her hip and back injuries and the fractured sacrum bone impaired her nervous system, she constantly suffered pain in the lower part of her back and hips, could not walk without pain, and certain of her injuries, hereinafter mentioned, are permanent.

The case was submitted to a jury on 65 special issues, and, as touching liability and the elements of damage sustained, the issues framed by the pleadings are sufficiently indicated by the verdict of the jury. They found: That Godbold was driving the defendant's car at a speed of 45 miles an hour at and just prior to the collision; that it was a negligent rate of speed, and a proximate cause of plaintiff's injuries; that at the time of and just prior to the collision, Godbold failed to keep a proper lookout for cars approaching him from the opposite direction and in particular the McKinney car; that such failure was negligence and a proximate cause of plaintiff's injuries; that Godbold could have passed to the right of the McKinney car with safety in time to have avoided the collision after seeing the McKinney car approaching; that such "failure" was negligence and a proximate cause of the plaintiff's injuries; that at the time of and immediately prior to the collision Godbold failed to have defendant's car under proper control, which was negligence and a proximate cause of the plaintiff's injuries; that at the time of and immediately prior to the collision, Godbold suddenly swerved defendant's car to the left and into the

McKinney car, which was negligence and a proximate cause of plaintiff's injuries; that Godbold saw the McKinney car approaching prior to the collision, and after discovering its approach and realizing the danger and peril of a collision, failed to use all the means at his command, consistent with safety to himself and his car, to avoid the collision, which he could have avoided, consistently with safety to defendant's car and himself, by the use of means at his command; and that the injuries to plaintiff were not the result of an unavoidable accident. The jury also found that the driver of the McKinney car did not fail to slacken speed in sufficient time; that he did not fail to sound his horn, or other signaling device; that he did not fail to keep a proper lookout at the time and place of the collision; that at the time and place of the collision, he had his car under control; that he was not guilty of negligence in driving at the rate of speed he was going at the time; that he did not fail to apply brakes in sufficient time; that he was not driving on the left-hand side of the highway in the direction he was going; that his car was equipped with adequate brakes; that Godbold was not driving on his right-hand side of the road; and they also found that the reasonable expense incurred by plaintiff, for the services of doctors and nurses, for medicine and hospitalization, amounted to $321.30. As a number of assignments and propositions are based upon special issue No. 65, we set it out in full, as follows: "What sum of money, if any, if paid now in cash, would reasonably compensate Mrs. Eula Ferris, the plaintiff herein, for the injuries, if any, she received in the collision in question, and in arriving at this amount, you may consider the pain and suffering, if any, she has experienced in the past and the pain and suffering, if any, she will experience in the future, and also her diminished earning capacity, if any, in the past and her diminished earning capacity, if any, in the future, and also any damage because of the disfigurement, if any, by reason of the scar upon her head?" The answer of the jury to this issue was $30,000. Each party moved for judgment; plaintiff's motion was sustained; judgment for $30,321.30 was rendered in her favor. In an amended motion for new trial, defendant complained of error (duly assigned and briefed), among others, that the jury, or members thereof, were guilty of misconduct,

improperly influencing the verdict adversely to defendant on the special issues, in the particulars hereinafter stated.

The first eleven propositions urged by defendant for reversal complain, in different forms, of the submission of special issue No. 65, heretofore set out, as erroneous, for the following reasons: (a) Because it authorized the recovery of damages for "the injuries" received by plaintiff in the collision and, in addition, damages for the "disfigurement" resulting from the scar, thus authorizing the recovery of double damages; (b) because the special issue authorized recovery of damages both "for all pain and suffering plaintiff had in the past experienced, or might in the future experience," and also damages for the "disfigurement," thus authorizing the recovery of double damages; (c) that if, for the reasons just stated, the issue did not authorize the recovery of double damages, it was nevertheless so misleading and confusing as to lead the jury to believe that plaintiff was entitled to recover the elements of damage mentioned and, in addition, damages on account of "disfigurement"; (d) because the measure of damages submitted in the special issue allowed recovery both for plaintiff's "disfigurement," and for her diminished earning capacity; (e) because the court assumed that the injury to plaintiff's head constituted a "disfigurement," hence was on the weight of evidence; (f) because the issue allowed plaintiff recovery of damages for the "disfigurement," as an independent element, in addition to other elements mentioned, in the absence of any pleading independently praying for such damages; (g) because said issue was on the weight of evidence, in that it authorized recovery of the different elements of damages, regardless of whether the jury had found favorably to plaintiff or otherwise, on the preceding issues; (h) because the issue was upon the weight of evidence in placing undue and improper emphasis upon plaintiff's alleged "disfigurement"; and (i) because of the absence of any evidence that the scar was a "disfigurement," or had caused, or would cause, plaintiff physical or mental pain, or in any way would interfere with her earning capacity.

Plaintiff countered with the contention that the objections urged by defendant in the court below, to special issue No. 65, were too general in nature to apprise

the court of the specific objections later pointed out in the motion for a new trial and now urged as assignments, to afford the court an opportunity to correct the charge in the respects as now specifically urged.

The objections by defendant, urged in the court below to the special issue, are as follows: "Defendant excepts and objects to the submission of special issue No. 65 because the same is an issue on the weight of the evidence and permits a double recovery and is not based upon any findings by the jury, and because said charge is suggestive and misleading to the jury."

We sustain the contention of plaintiff. If defendant had urged in the court below objections as specific as those now urged, the court would have known, before submitting the issue, wherein appellant claimed that it was on the weight of evidence, was suggestive, misleading, permitted double recovery, and also the meaning of the objection that "the charge was not based upon any findings of the jury," and thus would have afforded the court an opportunity to correct the charge, if deemed erroneous, in the respects now mentioned.

In the case of Walker et al. v. Haley, 110 Tex. 50, 214 S.W. 295, the Supreme Court, speaking through its distinguished Chief Justice, now of counsel for appellant, said: "The purpose of the act is plain [article 2185, R.S. 1925]. It is to provide the court, in advance, with the objections to which the charge is deemed subject, so as to afford opportunity for its correction in the particulars urged. It is, in a word, to secure, as far as possible, the preparation and submission of a correct charge to the jury." Again, in Isbell v. Lennox, 116 Tex. 522, 523, 295 S.W. 920, the Supreme Court said, in an opinion by Mr. Justice Pierson, that the purpose of the statute (Rev.St.1925, art. 2185) in question is to require parties to present their objections to the charge clearly, and apprise the court of the error in its charge, with a view to its correction; the objection must be more than a mere statement that he objects—it must point out the error complained of. Further elucidating the meaning of the statute, the Court of Civil Appeals at Amarillo, in Fort Worth & D. C. Ry. Co. v. Rowe, 69 S.W.(2d) 169, 174, speaking through Judge Martin, said: "The statute requiring exceptions to the court's charge would become a meaningless thing unless the courts so interpret it as to compel a litigant to fully and intelligently point out any alleged error therein. We have been moved [Judge Martin said] to consume space in the discussion of this particular matter because of the increasing frequency of records in this court in which errors in the court's charge are very plainly pointed out in the briefs, but vaguely and insufficiently so in the trial court. The purpose of the statute requiring exceptions was to assist, and not to snare, the court." To the same effect, see Panhandle & S. F. Ry. Co. v. Brown (Tex.Civ.App.) 74 S.W.(2d) 531; Ford Motor Co. v. Maddin (Tex.Com. App.) 76 S.W.(2d) 474.

So, we are of opinion that all assignments and propositions, complaining of the special issue on the ground that it is upon the weight of evidence, permits a double recovery, is suggestive, misleading, and not based upon prior findings by the jury, should be and are overruled for the reasons just stated.

However, we think the assignments that challenge the correctness of the special issue, because not authorized, either by the pleading or evidence, although raised for the first time in the motion for a new trial, are entitled to and should be considered. Defendant's contention in this respect is that: "There was no pleading that the scar was a disfigurement. No recovery was sought on account of its being a disfigurement. There was no testimony that it was a disfigurement * * *. Not only was there no pleading seeking damages on account of the scar as a disfigurement, and no testimony that it amounted to a disfigurement, but there was no testimony whatever that the scar had caused or would cause the plaintiff any physical or mental pain, or that it in any way affected her earning capacity."

The pleading and proof pertinent to this contention are as follows: Plaintiff alleged: "That at the time of the injury she was thrown against some portion of the car with such force and violence by reason of said impact with said car driven by said Godbold that there was inflicted upon her an open incised wound somewhat ragged, extending from about one and one-half inches above the outer margin of the left eye, upward and backward for a distance of about eight inches, with the convexity toward the forehead and ending at a point which is approximately the

center of the top of the scalp; that she was forced to undergo serious pain and suffering in having said wound sewed together immediately after the accident; that she has suffered great pain from said wound; that it has left a permanent scar upon her head, and particularly her forehead, which is visible, embarrassing and greatly affects her looks and countenance; that as hereinafter alleged, she has been principally engaged in sales work in department stores, and in the future, if she is ever able to work, said scar and disfigurement would affect her in carrying on her duties, especially on account of embarrassment and disfigurement, and would also affect her in securing employment."

As to the evidence bearing upon this matter, Dr. Sadler of Waco, witness for defendant, who examined plaintiff immediately after her injury, in a report made February 10, 1933, regarding her injuries and condition, stated: "(1) There is an incised wound which is somewhat ragged, extending from about 1½ inch above the outer margin of the left eye upward and backward for a distance of about eight inches with the convexity toward the forehead and ending at a point which is approximately the center of the top of the scalp * * *. Opinion: At the present time the scalp wound is healing nicely without infection or other complications. There should be no trouble from this except the unsightliness of the scar * * *." Plaintiff was before the jury in person, and testified in regard to the scar, and of course the jury had an opportunity of personal inspection. Dr. Thomasson, plaintiff's physician, testified that the scar was four or five inches in length, was permanent, and will not diminish in size very much. Whether or not the scar left upon plaintiff's forehead marred or changed her facial appearance for the worse depends largely upon its size. Dr. Sadler spoke of its "unsightliness," which, in our opinion, is just another word for "disfigurement." Plaintiff's allegations that the scar was permanent and a disfigurement were, in our opinion, established by the evidence. Defendant's assignments and proposition in regard to this matter are overruled.

For the reasons heretofore stated, we overrule defendant's assignments and propositions based on the contentions that special issue No. 65 was suggestive, upon the weight of the evidence, permitted a double recovery, was misleading, and not based upon previous findings of the jury. However, we have duly considered these assignments and propositions and, if deemed necessary to a decision of the case, would hold, for reasons which will be stated, that the charge is not objectionable in the respects mentioned. Was the charge calculated to mislead the jury into the error of allowing double damages for the same injuries? We do not think so. The authorities cited in the brief for defendant abundantly support the proposition that a charge reasonably calculated to mislead a jury into the error of allowing double damages for the same loss or injury would present reversible error. But the contrary is also true. The mere repetition of the elements of damage to be considered by the jury, in our opinion, would not necessarily condemn the charge; to constitute reversible error, such a charge would have to mislead the jury into the assessment of double damages. This doctrine was announced in San Antonio & A. P. Ry. Co. v. Corley, 87 Tex. 432, 29 S. W. 231; Texas & N. O. Ry. Co. v. Miller (Tex.Civ.App.) 211 S.W. 246; Texas & P. Ry. Co. v. Edwards (Tex.Civ.App.) 21 S.W.(2d) 754; Sumner v. Kinney (Tex. Civ.App.) 136 S.W. 1192.

The charge in question instructed the jury that, in arriving at a sum of money that would reasonably compensate plaintiff for her injuries, they could consider her past and future pain and suffering, and her past and future diminished earning capacity. Obviously, to this point, the charge is unobjectionable [see Texas Cities Gas Co. v. Ellis (Tex.Civ.App.) 63 S. W.(2d) 717; Berwald v. Turner (Tex. Civ.App.) 52 S.W.(2d) 112; Texas Utilities Co. v. Dear (Tex.Civ.App.) 64 S.W. (2d) 807; Breckenridge Ice & Cold Storage Co. v. Hutchens (Tex.Civ.App.) 260 S.W. 684], and if objectionable at all, the error lies in the concluding language, as follows: "and also (in arriving at the sum of money, you may consider) any damage because of the disfigurement, if any, by reason of the scar upon her head."

Disfigurement was not alleged by plaintiff as an element of physical pain and suffering, but as a probable cause of embarrassment, that is mental distress; hence the term could not be interpreted as a duplication of "pain and suffering." If the offending language of the special issues repeats an element of damage theretofore mentioned, the repetition is not obvious or

explicit, but must be ascertained by implication, in this, the disfiguring scar upon plaintiff's face may prevent her from obtaining employment as a saleswoman, the business she pursued for a number of years before being injured, and in this way probably diminish her earning capacity. But this meaning is so obscure that no one other than a lawyer would likely detect its existence.

In view of the undisputed evidence regarding the large wound upon plaintiff's forehead, and the four or five inch in length permanent scar remaining, we do not think the court erred in assuming that the scar was a disfigurement, nor do we think error was committed in telling the jury that such disfigurement could be considered as an element of damages. 13 Tex.Jur. page 429, § 253; Horton v. Benson (Tex.Civ.App.) 266 S.W. 213; St. Louis, I. M. & S. Ry. Co. v. McMichael, 115 Ark. 101, 171 S.W. 115; City of Amarillo v. Rust (Tex.Civ.App.) 64 S.W.(2d) 821.

If, in assessing plaintiff's damages, the jury had been required to separately assess the damage for pain and suffering and diminished earning capacity, and in addition "the damage because of the disfigurement, if any, by reason of the scar upon her head," we could readily determine whether or not double damages for the same injury, i. e., for her diminished earning capacity, were assessed; but this was not required of the jury; they were simply required to ascertain "what sum of money," a lump sum, "would reasonably compensate" plaintiff for her injuries, and in arriving at such verdict, they were permitted to consider the different elements of damage mentioned, including any damage because of the disfigurement by reason of the scar upon plaintiff's forehead.

We do not think it a reasonable conclusion that, after assessing damages for pain and suffering, and for diminished earning capacity, the jury would make an additional award for plaintiff's disfigurement. An identical situation was presented to the Supreme Court of Missouri, in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 486, and in disposing of the question the court said: "In the instant case the evidence tended to show that plaintiff's right leg was shortened and the small bone therein incurably fractured, by reason of which the normal function of the leg was permanently impaired. Such impairment

might or might not cause future pain, it might or might not cause a diminution of earning power; but wholly independent of these possible consequences it was an element which it was proper for the jury to consider in fixing plaintiff's compensation. If the jury was possessed of ordinary intelligence and a sense of fairness, as we must assume, it is hardly conceivable that after assessing, under the first and third paragraphs of the instruction, amounts to be allowed for future pain and suffering and for loss of earning power, they would make additional awards on these same grounds when they came to consider plaintiff's permanent physical disability. The instruction was not accurately drawn, but it cannot reasonably be held to have led the jury into error. Reynolds v. St. Louis Transit Co., 189 Mo. 408, 419, 88 S.W. 50, 107 Am.St.Rep. 360; Hite v. St. Joseph & G. I. R. Co. (Mo.Sup.) 225 S.W. 916, 921."

In its motion for a new trial, defendant complained of misconduct of the jury, in the following respects: (1) The discussion by one or more members of the jury as to whether the defendant would appeal the case if the verdict was more or less; (2) whether Godbold (appellant's agent who was driving the car collided with) had taken drinks of intoxicating liquor a short time before the collision and was drunk at the time, there being no testimony whatever that he had done so, or that his condition was other than sober before and at the time of the collision; (3) whether defendant carried liability insurance; (4) whether plaintiff was entitled to recover enough to purchase a home and enter into business, or to afford her a reasonable living and expenses for the rest of her life; and (e) a statement by one or more of the jurors that they had previously been by the scene of the collision.

At the hearing, one juror testified that he stated that, if a large verdict was rendered, the telephone company would not pay, but if a smaller verdict was rendered they might pay off. However, after the other eleven agreed, this juror said: "Well, I will go ahead and vote with you." The juror denied that he made a statement that he thought the amount agreed upon was too much, but said he did not think she (plaintiff) would get it. No discussion was provoked by the statement of this juror. Another juror, Mr. Orrill, testified that, after the verdict was

agreed upon and signed, but before leaving the jury room, a juror made the statement that the telephone company would probably make a settlement since a verdict for $30,000 had been awarded. As to whether Godbold had taken drinks of intoxicating liquors before the collision, and whether defendant carried liability insurance, the record discloses that, after the verdict was agreed upon and signed, but before the jury left the jury room, one juror stated that the telephone company carried insurance, had everything insured. No one answered the statement, and no comment ensued. There was testimony to the effect that, after the verdict was agreed upon and signed, but before leaving the jury room, a juror stated that Godbold testified that he had taken two drinks of liquor after the accident, but did not say how many drinks he took before the accident. As to the alleged statement that the plaintiff was entitled to recover enough to purchase a home, enter business, and for a reasonable living, the juror Orrill testified that he made a statement to the effect that he thought plaintiff was entitled to enough to buy a home and enter into business, and in his opinion $15,000 was a sufficient amount, and that she should recover somewhere around that sum. However, this juror agreed to the $30,000 verdict, and denied that he said plaintiff was not entitled to that amount; that whatever was said in regard to the matter was in the nature of an argument or discussion. Another juror, Mr. Steele, testified that there was a discussion to the effect that plaintiff was crippled for life, and ought to have a reasonable living and expenses for the balance of her days. As to the alleged statement by one or more jurors that they had previously been by the scene of the collision, the juror Young testified that some juror made the statement that he had been over the road where the collision occurred, but did not remember the curve. Juror Orrill did not recall the juror who made the statement, but said the remark was casual, that he paid but little attention to it, and that no argument in regard to the statement ensued. Another juror, Mr. Nichols, testified that, for his own satisfaction, he asked: "How many jurors have been over that road there?" He said several answered they had, but did not remember the curve; nobody remembered it; "nobody on the jury recalled the place; I remember very distinctly because I asked; nobody on the jury could recall the place at all."

We think it obvious that these were but casual remarks by the jurors, provoked no discussion, and were immaterial. The speculation by one of the jurors as to whether defendant would appeal the case or make settlement dependent upon the size of the verdict, and the statement by another that he thought plaintiff ought to recover a sufficient sum to purchase a home and enter into business, did not constitute overt acts or misconduct of jurors, within the meaning of the statute (article 2234, R.S. 1925), but were mere articulations of the mental processes or reasoning of these jurors; and even if improper, could not be used to impeach the verdict. Bradley v. Texas & P. Ry. Co. (Tex.Com.App.) 1 S.W.(2d) 861. The remark by one juror that the telephone company carried insurance, and by another that, while Godbold testified he took two drinks of liquor after the collision, but did not say how many drinks he took before the collision, were each shown to have been made after the verdict had been agreed upon and signed, but before the jury returned to the courtroom. Remarks of jurors made under these circumstances could not have been material factors in producing a verdict already agreed upon and signed. See article 2234, R.S. 1925; El Paso Electric Ry. Co. v. Cowan (Tex. Civ.App.) 257 S.W. 941; Texas Utilities Co. v. Dear (Tex.Civ.App.) 64 S.W.(2d) 807.

Statements by one or more jurors, to the effect that he or they had previously passed over the highway at the scene of the collision, but did not remember the curve in the road, were, in our opinion, wholly immaterial and had no influence upon the jurors one way or the other, as the existence of an "S" or double curve at or near the place of the collision was not a disputed, but an admitted, fact. Photographs and testimony were introduced by both parties that revealed the existence of curves at or near the place of collision, and the evidence of both shows that the collision occurred on a straight section of the highway at a point from 100 to 150 feet south of a curve, around which the McKinney car had just passed. Obviously, these remarks by jurors could have meant no more than that they had been over the road but did not remember the curves.

236

So, we conclude that the action of the court, overruling defendant's motion for a new trial based upon the alleged misconduct of jurors, was correct; hence, overrule all assignments and propositions relating thereto.

 Defendant assigns error on the refusal of the court to submit to the jury its requested issues Nos. C-1 and C-2, as follows: Special issue C-1. "Do you find and believe from a preponderance of the evidence that at the time and place of the collision the driver of the automobile in which plaintiff was riding was driving the same at such rate of speed as to endanger the life or limb or the automobile of Mr. Godbold, the employee of the defendant?" Special issue C-2. "If you have answered YES to the foregoing special issue No. C-1, then was the driving of said automobile at such rate of speed the proximate cause of the injuries to the plaintiff?"

As a basis for these issues, defendant alleged "that the driver of the car in which plaintiff was riding was guilty of the following acts of negligence, each of which was the sole proximate cause of the collision and the alleged injuries and damages to the plaintiff: (a) He was guilty of negligence in driving said car on the left-hand side of the road as it came toward defendant's car immediately before and at the time of the collision in violation of the traffic laws of this state; (b) he was guilty of negligence in driving immediately before and at the time of the collision at an excessive and dangerous rate of speed in violation of the traffic laws of this state and under the circumstances that existed immediately before and at the time of the collision."

Thus, the issue presented was that the negligence of the driver of the car in which plaintiff was riding "was the sole proximate cause of the collision and the alleged injuries and damages to plaintiff." The requested and refused charges did not present the issue pleaded, but sought simply to ascertain whether the car in which plaintiff was riding was being driven at such a rate of speed as to endanger the life or limb or the automobile of Godbold, and if yes, whether such rate of speed was the proximate cause, etc. The issues embodied in the requested and refused issues were, in substance, submitted to the jury and answered adversely to defendant, in the following: Special issue No. 24. "Do you find and believe from a preponderance of the evidence that the driver of the automobile in which the plaintiff was riding at the time on the occasion in question failed, if he did so fail, to slacken his speed in sufficient time to have prevented the collision in question?" To which the jury answered, "No." Special issue No. 41. "Do you find and believe from a preponderance of the evidence that at the time and place of the collision in question, the driver of the automobile in which plaintiff was riding, had the same under control?" To which the jury answered, "Yes." Special issue No. 48. "Do you find and believe from a preponderance of the evidence that the driver of the automobile in which plaintiff was riding was negligent, if he was, in driving the automobile at the time and place in question at the rate of speed that he was driving said automobile?" To which the jury answered, "No."

 So, if the issue requested, as to the negligence of the driver of plaintiff's car, was material, the same was fully covered in the issues submitted. However, it appears that plaintiff was a guest in the McKinney car; hence the negligence, if any, of Mr. McKinney, the driver, was not imputable to plaintiff, unless the driver's negligence was the sole proximate cause of the collision and injuries; this was the issue alleged by defendant, but was not the issue embodied in the requested and refused charges. See Southwestern Bell Telephone Co. v. Doell (Tex.Civ. App.) 1 S.W.(2d) 501, 506; Northern Texas Traction Co. v. Woodall (Tex.Com.App.) 299 S.W. 220; McCoy v. Beach-Wittman Co. (Tex.Civ.App.) 22 S.W.(2d) 714. We find no error in the action of the court refusing the requested issues, therefore overrule the assignment and proposition in regard thereto.

 Defendant contends that the court erred in submitting the question of discovered peril. Its contention in this respect is set forth in its proposition No. 17, as follows: "The doctrine of discovered peril has no application in any case unless the issue of 'the exposed condition' of the plaintiff as brought about by his own negligence is raised by the testimony; and to support a judgment depending in any degree on that doctrine the judge or jury must have found that such exposed conditions existed. The findings of the jury in this case and under their necessary implication are in direct conflict as to the situation of the McKinney car as Godbold ap-

proached it. Whether it was then on Godbold's side of the highway or McKinney's, was an issuable question; and since there was no express, clear and indisputable finding of the jury that it was on Godbold's side, an indispensable element of the doctrine of discovered peril is lacking in the findings and accordingly the judgment, insofar as the court based it on the issues presenting that theory and the answers of the jury thereto, has no support in the verdict." The discovered peril issue was submitted in special issues Nos. 15, 16, and 17. To No. 15 the jury was required to answer, from a preponderance of evidence, whether the driver of the company's automobile, Mr. Godbold, prior to the collision and after discovering the approaching McKinney car, saw and realized the danger and peril of a collision; to No. 16, they were required to answer whether the driver, after discovering the McKinney car and realizing the danger and peril of a collision, failed to use all the means at his command consistent with the safety of his own car and its occupants, to avoid a collision; and to No. 17, they were required to answer whether Mr. Godbold, after discovering the McKinney car and realizing the danger of a collision, by the use of all means at his command, consistent with·the safety of his own car and its occupants, could have avoided the collision? To each of these issues the jury answered, "Yes." We think it quite true that the doctrine of "discovered peril," in its origin, was a necessary qualification of the general rule that contributory negligence of the person injured ordinarily bars recovery; but we are also of opinion that its application is not necessarily limited to such cases. If a person is discovered in a perilous position, from whatever conceivable cause, we think a sound humanitarian public policy would require the discharge of this new duty to protect the exposed person, as the peril of another would be just as appealing in one instance as in another, and this without regard to the cause of the exposure. The issue of discovered peril was injected by plaintiff in answers to certain defenses urged by defendant, based upon the alleged negligence of both plaintiff and the driver of the car in which she was riding, and as the evidence was conflicting on these issues, and showed further that Godbold, driver of defendant's car, saw the McKinney car when it was at a point from 100 to 150 feet from the place of the collision, thus tending to show that he should have

realized the probability of a collision, we think the submission of these issues and the findings of the jury thereon were justified. However, the judgment need not be bottomed on the answers of the jury to these issues; they may be ignored and the judgment can rest on the answers of the jury to other issues that convicted defendant of negligence and established its liability.

In proposition No. 22, the contention is made that the court erred in not permitting the defendant to introduce testimony which would have shown that, up to the trial, plaintiff refused to permit herself to be examined by competent physicians other than her own physicians. We fail to find in the record support for the contention that plaintiff refused to be examined by competent physicians other than her own. The record discloses considerable correspondence between attorneys for the parties, respectively, in regard to this matter, and doubtless there was some misunderstanding; but we do not think Mrs. Ferris ever refused to be examined, or that her attorneys refused for her to submit to an examination under reasonable conditions; in fact, the record discloses that she did submit to three examinations by defendant's physicians, all of whom testified, and two of these examinations were exhaustive and painful, and one must have been shocking and humiliating to plaintiff, as she was required by the physician conducting the examinations to strip naked. We overrule the assignment and proposition in regard to this matter.

In its nineteenth proposition, defendant contends that: "The propounding by counsel for the plaintiff to the witness Godbold of the question as to whether he, Godbold, had had a drink the afternoon of the collision and which, over objection, Godbold was required to answer, was without any basis in the pleading of the plaintiff and was improper and prejudicial to the defendant, constituting, under the circumstances, reversible error." After Godbold had testified in regard to the manner he handled and drove his car on the occasion, he was asked, on cross-examination by counsel for plaintiff, if he had taken a drink of liquor that afternoon? The question was objected to by defendant, on the ground that it was improper, prejudicial, and without basis in the pleading. The court overruled the objections, and the witness answered, in effect, that he

had not drank liquor that day prior to the collision, but that later in the day, after returning to Waco, suffering from injuries received in the collision, took two drinks. We do not think the court erred in overruling the objections. A litigant is only required to plead facts, not his evidence. The issue under investigation was as to the negligence of Godbold in driving and handling his car prior to and at the time of the collision. Mr. and Mrs. McKinney testified that they saw the Godbold car approaching at a rapid rate of speed, from 45 to 50 miles per hour; that the car was zigzagging across the highway; that it had an up-and-down or bumping motion, described by Mrs. McKinney as "loping." We think proof of Godbold's condition at the time, whether sober or intoxicated, was admissible for consideration by the jury in connection with other evidence bearing upon the manner in which he controlled and drove the car; that is, whether negligently in the respects alleged, or otherwise. Babbitt's Motor Vehicle Law (4th Ed.) p. 1627, par. 2250, announces the following doctrine: "Intoxication of Driver.—The intoxication of the driver of an automobile is competent evidence of the speed and recklessness with which he was driving, as it is a matter of common knowledge that intoxicated persons are wholly unfit to operate automobiles. Accordingly, testimony as to whether the driver was sober soon after a collision with a pedestrian is admissible. It is also proper to show that the driver had been drinking, although he was not intoxicated, or that the witness detected the odor of liquor on the driver's breath. Evidence as to driver's intoxication is admissible to enable the court to judge the driver's testimony as to the cause of the accident." Also see Huddy's Enc. of Automobile Law, vols. 15 and 16, p. 251, § 135; also, Milhouse v. Stroud, 134 S.C. 17, 131 S.E. 619; Wise v. Schneider, 205 Ala. 537, 88 So. 662. We find no error in the action of the court in regard to this matter, hence overrule defendant's contention with reference thereto.

■ After a careful consideration of all assignments and propositions urged by defendant for reversal (a few not discussed but duly considered), we have reached the conclusion that they should all be overruled, with the exception of proposition No. 28, based upon assignments complaining of the excessiveness of the verdict. This contention, in our opinion, should be sustained and the judgment below reversed, for that reason alone. We have had some difficulty in arriving at the amount of the excess, but after considering all evidence bearing upon the nature, extent, and permanency of plaintiff's injuries, the pain and suffering experienced by her in the past, and such as she will likely suffer in the future, and her diminished earning capacity past and future, we have concluded that the verdict and judgment based thereon are excessive by $7,500. Therefore, the clerk of this court will notify plaintiff or her attorneys of record that this court holds the verdict and judgment excessive as above stated, and that they are privileged to file among the papers of this cause, on or before ten days after the filing of the opinion herein, a remittitur of such excess, and if the same shall be filed by plaintiff, or on her behalf, within the time mentioned, the judgment of the trial court will be reformed, and as reformed will be affirmed; otherwise, the cause will be reversed and remanded to the trial court for further proceedings.

Affirmed, conditionally.

## Order Reforming and Affirming Judgment on Filing of Remittitur.

Appellee having, within the time prescribed by the court, filed a remittitur of $7,500, the excess ascertained to exist in the verdict and judgment, the judgment below is reformed, by reducing the amount thereof $7,500, and as reformed is affirmed, against appellant and sureties upon its supersedeas bond, for the full amount of the judgment below, less $7,500, with 6 per cent. interest per annum from the date thereof and all costs of the trial court; however, all costs occasioned by the appeal will be taxed against appellee.

Reformed and affirmed.