**CHARLES T. PICTON LUMBER COMPANY, Appellant,**

v.

**Marvin Ray REDDEN et al., Appellees.**

**No. 523.**

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 29, 1970.

Rehearing Denied Feb. 19, 1970.

Keys, Russell, Watson & Seaman, James C. Watson, Corpus Christi, for appellant.

E. B. Grimes, Robstown, Utter & Chase, Norman L. Utter, Corpus Christi, for appellees.

OPINION

GREEN, Chief Justice.

This is a personal injury suit. Appellees Marvin Phillip (Bill) Redden individually and as next friend of his son Marvin Ray Redden recovered a judgment against appellant Charles T. Picton Lumber Company for $128,629.69 for damages to the son proximately caused by a collision between appellant's truck-trailer and a farm tractor being operated by Marvin Ray. After its amended motion for new trial was overruled appellant perfected its appeal to this Court. Since Marvin Ray was a minor at the time of the accident his father was a party to the suit. However, unless otherwise indicated, the term "appellee" as hereafter used in connection with the factual situation will refer only to the son Marvin Ray Redden.

The collision occurred on a clear morning on a straight stretch of Farm to Market Road No. 624 in Nueces County, Texas.

(See sketch). The road ran generally east and west, and had two paved lanes for traffic, each 12 feet wide, with an improved shoulder on each side. Appellant's truck-trailer combination was a large hydraulic dump truck and trailer; it was travelling in a westerly direction, and was empty. Appellee lived three-tenths of a mile east of the site of the collision; he had commenced his trip on the farm tractor at his home and without any attachments to his tractor, and was also travelling on 624 in a westerly direction ahead of the truck. The accident occurred when the truck driver attempted to pass the farm tractor to its left as appellee was crossing or had crossed the south lane of the pavement to enter a caliche field road. It occurred on the southern shoulder of the highway as it joined with the caliche road. (See ⊗ on sketch.) As the truck driver was attempting to avoid the collision, the truck and trailer separated and jackknifed, the trailer running into the truck, and the side of the truck swung against the tractor with sufficient force to practically demolish it.

The jury found that appellee's failure to give a continuous signal of his intention to turn left during at least the last hundred feet of travel of the farm tractor before turning was a proximate cause of the collision, and in answer to other issues exonerated appellee of improper lookout and of turning when it was not safe to do so. The

jury found the truck driver at fault on lookout, failure to slow down, failure to stay on his right side of the road, failure to sound his horn, and attempting to pass when traffic in the opposite direction was a hazard. The jury also found (Issue No. 12) that immediately prior to the collision the truck driver could not have avoided the

accident by turning his truck to the right. All of the standard issues to establish *discovered peril* were answered against appellant, and in view of the finding of contributory negligence of appellee, the judgment was based on such answers of discovered peril.

By its Points of Error Nos. 1, 2, and 4, appellant raises the proposition of "no evidence" to warrant submitting to the jury the special issues on discovered peril (Nos. 21–26, inclusive). Point No. 3 is to the effect that the answers to such discovered peril issues were against the overwhelming preponderance of the evidence.

■■ When the contention of "no evidence" is made, as in the first, second and fourth points, a question of law is presented. In deciding that question the appellate court must consider only the evidence and the inferences therefrom tending to support the finding, and disregard all evidence and inferences to the contrary. On the other hand, a point raising factual insufficiency of the evidence to support certain material findings means that the evidence supporting such finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. The Court of Civil Appeals in deciding such point is required to consider all of the evidence. Garza v. Alviar, Tex.Sup.Ct., 395 S.W.2d 821, 823. Since both legal and factual insufficiency points are presented, we shall discuss what we consider to be the material evidence concerning the discovered peril issues; however, in deciding the questions presented we shall be guided by the rules applicable to each point, including the rule that in passing upon "no evidence" points, we may not consider or give weight to other jury findings. Enloe v. Barfield, Tex.Sup.Ct., 422 S.W.2d 905, 907; C. & R. Transport, Inc. v. Campbell, Tex.Sup. Ct., 406 S.W.2d 191, 194.

The evidence relative to these issues was given by three eyewitnesses to the accident, appellee Marvin Ray Redden, T. E. Min-

yard, appellant's truck driver, and Pete Ramos, the driver of an east bound truck. In addition, there was the evidence of plaintiff's expert witness, and a large number of photographs of the vehicles and the roadway at the site of the collision.

Marvin Ray testified that he entered F. M. Road 624 at the Redden house and proceeded west with the intention of turning off to the south at a caliche field road about three-tenths of a mile to the west to enter the field there and do some discing. After he had turned into No. 624, he traveled in the center of his right hand lane of the pavement at about 14 m. p. h. until he commenced a gradual angling turn to his left about 120 to 150 feet from the caliche road. He never at any time drove on the right hand shoulder of No. 624. No car passed him going west from the time he got on the highway until the accident. Just before he started making his angling turn he looked back to check traffic. He saw appellant's truck—he did not recollect how far behind him—in the center of the right hand lane, the same one that he was then in. When he started his angling left turn the truck had not gone over the center line, and there was no indication to him that the truck driver intended to pass. He slowed down his speed to about 10 m. p. h. and commenced a gradual turn into the left lane about 120 to 150 feet from the caliche road, and then resumed speed in order not to kill his motor, but reduced speed again to 10 m. p. h. before reaching the field road. He did not give any hand or other signal of his intention to turn left as he thought the truck driver saw what he was doing. He could see the center line of the road come under the tractor as it angled into the left lane. Then the farm tractor's left rear wheel and front wheel went off the pavement and onto the shoulder at a point approximately 30 to 45 feet from the caliche road. It took him about 4 or 5 seconds to go from the place where he started slanting across the highway to the point of contact. The truck driver did not sound his horn or give any signal of an intention to pass.

The truck driver, Minyard, testified concerning the size, weight, brakes, wheels, and other parts of the truck. It had air brakes which could be applied on all 18 of the wheels of the combination truck-trailer by use of the foot brake. There was a separate brake lever on the steering column which would apply the brakes on the rear wheels of the trailer. That would add no braking power when the foot brake was applied.

Minyard further testified that on this occasion he first saw the farm tractor as he came out of the curve about 4/10 mile east of the Redden house. (See sketch) His truck was travelling about 50 m. p. h., and never slowed down until he applied his brakes just before the accident. He stated that as he approached closer to the farm tractor, there was a car in between them, and the tractor was proceeding with its right front and rear wheels on the right shoulder, he assumed in order to permit this car to pass. He estimated his distance from the tractor as somewhere between 200 and 500 yards when this car passed appellee. Appellee's vehicle remained in this position, with its right wheels on the right shoulder, until it reached the caliche driveway. Minyard started to pass appellee, thinking he had pulled over to the right to permit an easier passing; however, appellee, without any signal, turned suddenly to his left directly across the left lane into the path of the truck. He estimated that he was about 100 to 150 feet behind appellee when he knew appellee was going to turn. He did not blow the truck's horn. When the farm tractor commenced its left turn he (Minyard) knew it was turning to the left. He had started to pass on the left, and was on or near the center line when he decided to set his brakes. He did not set the hand brake. He applied the foot brake as hard as he could, applying all brakes on all wheels of his truck and trailer. He skidded about 137 feet before the collision. Just before the contact, he tried to turn again with the turn of the farm tractor,

but his truck-trailer combination jack-knifed, the trailer broke away from its coupling and ran into the truck portion. The truck had already swung into and hit the farm tractor with such force as to demolish the latter. Minyard stated that when he applied his brakes, the truck-trailer was partly in the left lane; if he had been able to turn to the right he would have hit the farm tractor with the radiator part of his truck; as it was, the truck hit the farm tractor with the right side of the cab.

Pete Ramos testified that he first saw appellant's truck on the highway at a distance of from 2000 to 3000 feet as he was approaching from the west in the truck he was operating. He testified that there were no vehicles between his truck and appellant, and no cars had passed him going west for quite a while before the accident. No vehicles passed him travelling west after the collision. He could not see the tractor because the truck was behind it.

John Bentley testified as an expert witness for appellee. He was called into the case by appellee early in 1968, about 2½ years after the accident and about a year before the trial in January 1969. He had been in business for himself of scientific analysis and accident reconstruction for a number of years in Corpus Christi and had theretofore been so employed by the Department of Public Safety. In addition to his practical experience, he had been sent to various schools while with the Department of Public Safety, and studied courses in handling and investigating accidents, interpretation of tire marks and damage to vehicles from the application of physical force, such as kinetic energy formulas and centrifugal force formulas and test skids, reaction time, mathematics and physics. He said he averages investigating one hundred fifty to two hundred fifty accidents per year.

He further testified that in his investigations he interprets photographs, ex-

amines the scene of the accident, and by using such information and physical evidence as is available, uses physics and mathematics in order to determine speeds and relative positions of the vehicles and ascertains mathematically what the time sequences would be.

In his investigation of this case, he used information gained from appellant's anwers to interrogatories concerning size, weight, braking power and other details of the truck. He made a personal examination of the scene of the accident, location and width of the highway, the white dash markings on the road, the photographs in evidence of vehicles and highway, and he correlated the photographs to determine if the roadway was in the same condition at the time of his personal examination at it was at the time of the accident. He testified concerning the skid marks shown in the photographs. From such information, and from certain calculations which he explained in detail on direct and cross-examination, he was able to calculate, among other things, the path and speed of the truck-trailer prior to and at the time of the collision, the angle of the wheels at the time of the collision, the coefficient of friction of the tires on the road at various stages of the truck's travel, and the path of travel of the vehicles after collision. Based on his experience and his calculations, he expressed the opinion, over appellant's objections, (1) that if the truck driver had not applied his brakes he could have travelled in the right hand lane and the farm tractor would have cleared the right lane by the time the truck overtook it, and (2) during the time the truck-trailer was skidding, the driver could have steered the truck from its path onto the highway and have avoided the accident. In his opinion, based on his calculations about which he was thoroughly cross-examined, the heavy skid marks shown on the photographs showing 126 feet of skidding before the collision were left at the beginning of the skidding by the truck-tractor and

not the trailer. He testified that the photographs did not show any braking on the part of the trailer at the beginning of the skid marks. From his studies he calculated the speed of the truck-trailer at the time of brake application as approximately 56 m. p. h., and at time of collision at 32 m. p. h. He estimated the speed of the tractor at the time of collision at 17.4 m. p. h. by one method of calculation, and 19 m. p. h. by another.

We shall pass upon the question of admissibility of certain of Bentley's conclusions under appellant's fifth point.

The applicable rules concerning evidentiary requirements to raise issues of fact of discovered peril are concisely set out by our Texas Supreme Court in Texas & New Orleans Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901, 905, as follows:

"In a discovered peril case, it is necessary for plaintiffs to prove that the defendant actually discovered and realized their perilous position in time to have avoided the collision by the exercise of ordinary care in the use of all the means at their command. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967 (1946). It is not sufficient that the defendant should have discovered, or should have realized, the perilous position of the plaintiffs. Safeway Stores, Inc. v. White (1961), Tex., 348 S.W.2d 162; Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378 (1945). There must be a last chance to avoid the injury, and the last chance must be a clear one. R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960).

"On the other hand, the fact of timely realization of the danger may be established by circumstantial evidence. Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957). To raise the issue of discovered peril here, it was only necessary for the plaintiffs to show that the defendant realized, in time to have avoided the collision, that

plaintiffs were in a position of peril, and were pursuing, and probably would continue to pursue, a course that was likely to result in their being injured. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); Safeway Stores, Inc. v. White, cited just above; Galveston, H. & S. A. Ry. Co. v. Wagner (Tex.Com.App.1927), 298 S.W. 552. The quantum of proof required of the plaintiffs on these elements of discovered peril, in order to entitle them to have the jury pass upon them, was such facts and circumstances as, taken together with all reasonable inferences therefrom, constituted some evidence of probative force of their existence. Ford v. Panhandle & Santa Fe Ry. Co., cited just above."

The special issues submitted on discovered peril, all answered in the affirmative by the jury, were the same as those submitted in Gentry v. Southern Pacific Company, Tex.Civ.App., 449 S.W.2d 527, opinion handed down by this Court on December 31, 1969. There was no objection to the form of these issues. We are of the opinion that the evidence in our present case is sufficient legally and factually to support the submission of such issues, and to warrant the affirmative answers of the jury thereto. We further find that the testimony of the three eye-witnesses would, without expert testimony, authorize such submission and findings, and that the evidence given by Bentley reinforces the testimony of appellee's other witnesses.

Minyard, the truck driver, stated that he saw the farm tractor on the highway when he came out of the curve some 4/10 of a mile distant. At this time the tractor was not in a position of peril. Minyard estimated his speed at about 50 m. p. h. He testified that he was approximately 150 feet from appellee when he realized that appellee was going to turn towards the caliche field road. He justified his actions by testifying that prior to appellee's turning he (appel-

lee) was driving the farm tractor with its right wheels completely off the paved highway and on the right shoulder, in order to permit a car that was between the truck and the farm tractor to pass, and that he (Minyard) thought the tractor remained on the right shoulder in order to permit him to pass. He stated that appellee continued to drive in that manner until he made a sharp, sudden turn directly across the highway into the truck's path as the truck was trying to pass him.

■ The jury was at liberty to believe or disbelieve Minyard's testimony, or believe any portion and reject any other portion. Safeway Stores, Inc. v. White, Tex.Sup. Ct., 348 S.W.2d 162; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561. In this instance there were eye-witnesses other than the operator of appellant's truck who testified as to the factual situation, and their testimony was contrary to much of the truck driver's testimony. Appellee did not have to rely upon defendant's operator to establish his case.

Appellee denied that any portion of his tractor was at any time on the right hand shoulder, stating that at all pertinent times his tractor was in the center of the right hand lane until he began making his angling turn to the left. He denied that there was any car following him between the tractor and the truck, in which denial he was corroborated by the witness Ramos. He denied that he made a sharp sudden turn directly across the left lane to the point of collision. He testified that prior to commencing his turn, he looked behind him and saw the truck being driven in the right hand lane, and then he began a gradual angling turn across the left lane about 120 to 150 feet from the point of collision. The truck driver did not blow his horn.

We must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the jury findings.

Based on the evidence and the reasonable inferences the jury could have believed that the truck was 150 feet from the farm tractor, and the latter was 120 to 150 feet from the point of collision, when the truck driver realized that the farm tractor was crossing into the left lane toward the caliche road, and that at that time the truck was proceeding in its right lane, and that the truck driver did not give any signal of his intention to pass. The evidence of these eyewitnesses justified a finding that as appellee crossed the center line he was in a position of peril and that Minyard, the truck driver discovered and realized such position of peril at the time when Minyard crossed the center line into the left hand lane.

As to the time element involved the following evidence was elicited from appellee on cross-examination:

"Q Now, at fourteen or fifteen miles an hour do you know how fast the tractor was moving in feet per second?

A No, sir, I have no figures on that.

Q Let's figure it together. At sixty miles an hour a moving object is traveling eighty eight feet and fifteen miles an hour would be one fourth, or twenty two feet per second? ·

A Yes, sir.

Q So, a hundred and twenty, or fifty, feet would take four or five seconds to travel that distance?

A Yes, sir.

Q Now, if you have a vehicle moving fifty miles an hour, that would be five-sixths of eighty eight feet, which would be roughly seventy three feet that object would be moving?

A Yes, sir.

Q · Of course that is three and a half times as fast as you were moving?

A Yes, sir.

Q So, in four or five seconds that vehicle would move, roughly, three hundred feet while you were moving a hundred and twenty feet?

A Yes, sir."

When it is considered that all evidence of the appellee and Minyard, as to distance was approximated, and not measured on the ground, the triers of fact could well have considered that it would have taken longer than 4 or 5 seconds for the tractor at the rate of speed it was going to get from the place it crossed the center line to the point of contact, as well as longer for the truck to cover the 300 feet more or less from where the driver first realized that appellee was going into the left lane until the collision. Particularly is this true when the braking or retardation time is considered.

We find that the opinions and conclusions expressed by Bentley are corroborative of the appellee's testimony of the manner in which the collision occurred.

■ The facts and circumstances in evidence taken together with all reasonable inferences therefrom were, in our opinion, sufficient to raise a material fact issue as to whether or not the discovery and realization by Minyard of the perilous position of appellee were in time to have avoided the collision consistently with the safety of himself and his truck by the exercise of ordinary care in the use of all the means at his command, and that he failed to use such means, and that such failure was a proximate cause of the collision. Without intending to limit the jury's consideration of other possible means, a fact issue was raised both by the evidence of the eyewitnesses and the testimony of Bentley that the truck driver could have safely avoided the accident by proceeding on the right hand lane of the pavement or by taking other evasive action, or by sounding his horn before crossing into the left lane. Texas & N. O.

R. Co. v. Krasoff, 144 Tex. 436, 191 S.W. 2d 1.

Appellant's Points of Error Nos. 1, 2, 3 and 4 are overruled.

■ Appellant's Fifth Point of Error is that the court erred in permitting the witness John Bentley to express conclu- sions and opinions (1) that appellant's driver could have continued in his own right hand lane, and (2) as to how much turn would cause a truck-trailer to jack-knife, when his testimony showed he was not qualified to express such conclusions and opinions.

Bentley qualified as an expert in the field of accident analysis and scientific reconstruction. See opinions of this Court in Kettle v. Smircich, 415 S.W.2d 935, n. w. h., and McIlroy v. Wagley, Tex.Civ. App., 437 S.W.2d 5, wr. ref. n. r. e. in which we passed on the trial court's discretion in regard to Bentley's qualifications. He used all available information, i. e., interrogatories, personal examination of the scene, correlation of the actual scene with photographs, and considering his studies and experience and his calculations and based upon his scientific and mathematical deductions, he expressed his opinions as to means which were available for appellant's driver to have avoided the collision.

We have carefully read over the entirety of Bentley's testimony in relation to appellant's objection and fifth point, and we find his evidence established his qualifications to state the conclusions and opinions expressed by him. Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506, wr. ref. n. r. e. We do not find where the witness *assumed* the truth on any particular state of facts contrary to the evidence, as the expert did in Polasek v. Quinius Tex.Civ.App., 438 S.W.2d 828, wr. ref. n. r. e. While his conclusions as to the speed of the farm tractor differed from appellee's testimony, he did not just assume such speed, but calculated it by his mathematical formulas as explained in great detail by him on direct and cross-examination.

He was cross-examined at length on his calculations and conclusions, but after such cross-examination appellant made no motion to strike and did not renew any of his objections. Issues of credibility and weight were raised as to Bentley's testimony, but we find nothing in the evidence to establish that the trial court reversibly erred in exercising the discretion allowed him to admit or reject the expert testimony. Appellant's fifth point is overruled.

■ Appellant's Sixth Point of Error is overruled. In view of our holdings heretofore expressed under the first four points, and especially in the last sentence of our discussion thereunder, we find no material and irreconcilable conflict between the jury's answer of "No" to Special Issue No. 12 inquiring whether they found from a preponderance of the evidence that appellant's truck driver could have avoided the accident by turning to the right immediately prior to the collision, and their answers to the discovered peril issues 24 and 25 inquiring whether the realization and discovery of appellee's perilous position was made by Minyard at such time and distance as that he could in the exercise of ordinary care and by the use of all the means at his command, etc., have avoided the accident, and (25) whether he was negligent in failing to use such means. C. & R. Transport, Inc. v. Campbell, Tex. Sup.Ct., 406 S.W.2d 191, 195.

■ Appellant's Seventh Point of Error is that the trial court erred in refusing to submit its requested special issues on sudden emergency. This point is overruled. We quote as follows from Reddick v. Long-acre, Tex.Civ.App., 228 S.W.2d 264, w. e. ref. n. r. e., which language we here adopt.

"While under the evidence the court may have been justified in submitting appellants' issues on sudden emergency, yet the verdict of the jury convicted appellants of negligence which proximately

caused the injuries of appellee Longacre; therefore even if the court had submitted such issues on sudden emergency in behalf of appellants and if the jury had answered them favorable to appellants, still it would not have affected the verdict of the jury and the judgment of the court based upon other findings convicting appellants of such negligence which proximately caused the injuries to appellee Longacre. Hence the error if any became harmless. *Also, since the court submitted to the jury special issues concerning the primary negligence of appellants and issues on discovered peril, in our opinion appellants cannot complain for failure of the court to submit issues upon emergency.* Younger Brothers v. Ross, Tex.Civ.App., 151 S.W.2d 621; White v. Munson, Tex.Civ.App., 162 S. W.2d 429; Barrington v. Duncan, Tex. Civ.App., 162 S.W.2d 1025." (Emphasis added).

See also Havens v. Guetersloh, Tex.Civ. App,. 255 S.W.2d 233, 235, wr. ref. n. r. e.; Williams v. Voight, Tex.Civ.App., 264 S. W.2d 454, 457, wr. ref. n. r. e.; Consolidated Furniture Company v. Kelly, Tex. Civ.App., 369 S.W.2d 53, 58.

Especially is the above applicable in the absence of requested special issues of sole proximate cause of the collision. Stephens v. McCarter, Tex.Civ.App., 355 S.W.2d 93, 95, n. w. h.; Mrs. Bairds' Bakeries, Inc. v. Roberts, Tex.Civ.App., 360 S.W.2d 850, wr. ref. n. r. e.; Robertson Tank Lines, Inc. v. Sawyer, Tex.Civ.App., 416 S.W.2d 886, n. w. h. In the present case appellant's request for the sudden emergency issues did not include any proximate cause or sole proximate cause issue. In the case of Kansas City Southern Railway Company v. Flowers, Tex.Civ.App., 336 S.W.2d 235, wr. ref. n. r. e. cited by appellant, the court held that there was a conflict between the findings of discovered peril and sudden emergency. However, it will be noted that the jury found that the sudden emergency was "negligence, proximate cause and sole cause" of the occurrence, p. 237.

The court did not commit reversible error in refusing such special issues.

Appellant's Eighth Point of Error reads as follows:

"The trial court erred in including in the damage issue over Appellant's objection an element for 'loss of physical ability,' both past and future, because the same permitted the jury to award double damages, since the ultimate issue of physical pain and mental anguish (which was submitted) includes loss of physical ability."

The special issue referred to reads:

## "SPECIAL ISSUE NO. 29

"What sum of money, if any, do you find from a preponderance of the evidence, if paid now in cash, would fairly and reasonably compensate Plaintiff, Marvin Ray Redden, for damages, if any, sustained by him as a direct and proximate result of the injuries, if any, sustained by the said Marvin Ray Redden as a direct and proximate result of the collision?

In answering this issue you are instructed that you may take into consideration the following elements of damage, if any, and none other:

a. Physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence Marvin Ray Redden has suffered from the date of the collision up to the present time as a direct and proximate result of the collision.

b. Physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence Marvin Ray Redden, in reasonable probability, will suffer in the future from and after this date as a direct and proximate result of the collision.

c. Loss of physical ability, if any, which you believe from a preponderance of the evidence Marvin Ray Redden has suffered from the date of the collision to the

present time, as a direct and proximate result of the collision.

d. Loss of physical ability, if any, which you believe from a preponderance of the evidence Marvin Ray Redden, in reasonable probability, will suffer in the future from and after this date, as a direct and proximate result of the collision.

Answer by stating the amount, if any, in dollars and cents."

Appellant's sole objection to this issue was:

"IX

To Special Issue No. 29 because it submits as an element of damages 'loss of physical ability', both past (subparagraph c) and future (subparagraph d) when the same constitutes an evidentiary matter and a subdivision of the ultimate inquiry, namely, whether Plaintiff Marvin Ray Redden has sustained any loss of earnings or earning capacity and/or whether he has suffered or will suffer any physical pain and suffering and/or mental anguish."

The answer of the jury was $100,000.00.

There was evidence introduced on the trial that appellee suffered very serious physical disability as a result of this collision, and that he will in all reasonable probability be permanently a paraplegic from the waist down. He can never engage in activities requiring an able body. He will permanently, according to medical testimony, be limited to braces, crutches, or a wheel chair to go from place to place. He has lost the ability to urinate or have a bowel movement in the normal manner. His nervous system is damaged, and his body from the navel down has a disfiguration. Other physical disability was shown by lay and medical testimony. Appellant does not attack by objection or point of error the legal or factual sufficiency of the evidence to support the jury's answer to this issue, nor does it contend by point of error such answer was excessive.

Considering the evidence of appellee's injuries, we believe that the court was not in error in overruling the objection made, and in giving the instructions objected to. In so holding we rely on Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880, a personal injury case, and other authorities cited hereinbelow. It is to be noted that in *Felder*, like in our case, recovery for lost earnings or lost earning capacity was not submitted. We copy at length from *Felder* as follows:

"The company next complains of the instructions to the jury on damages, and criticizes the following charge as subjecting the company to a double recovery and as being on the weight of the evidence:

'What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate plaintiff, Guy Felder, for his injuries, if any, directly and proximately caused by the act of B. F. Goodson, if any, taking into consideration the following elements of damage exclusively, and none other:

'1. Such physical pain and mental anguish, if any, as you may find from a preponderance of the evidence that the plaintiff, Guy Felder, has suffered, if any, from the date of the occurrence down to the date of this trial.

'2. The reasonable present cash value to the plaintiff of the loss of his teeth.

'3. Disfigurement, if any.

'Answer by stating the amount, if any, in dollars and cents.'

Although the pleadings claimed other damages, the proof tended to show only mental and physical pain and suffering and bodily injuries consisting of scars on Felder's face and the loss of seven front teeth.

The proof of pain and suffering included a showing that Felder was rendered unconscious for fifteen or twenty minutes

by Goodson's blow, and bled profusely; his teeth were loosened and his mouth was sore; he continued having headaches and a lack of 'feeling' about the face down to the time of the trial,—afflictions he did not have before the assault.

As to the lost teeth, Felder testified he had seven extracted within fifteen days after the assault, and that these teeth had previously been 'strong'. Two of Felder's relatives testified that his teeth were 'loose' immediately after the injury, and one of them testified further that she pulled one tooth on the following day. He testified that dentists pulled the others. As to the scars on his face, there were two, one on his upper lip and one on his left cheek, which the jury could observe, scars which Felder testified he bore from the assault. The proof about damages came largely from Felder himself, but the evidence about the loss of teeth was corroborated by the two witnesses to the extent above stated.

Now analyzing the court's charge, it is to be noted that, first, the jury was limited to the assessment of such compensatory damages as were fair and reasonable. Upon elementary principles, this was right. Next, the damages were limited to those flowing directly and proximately from such injuries, if any, as may have been inflicted from Goodson's acts. It will be seen that the instructions were hedged about twice with the phrase 'if any,' so that the first paragraph of the charge, taken as a whole, certainly limited the jury strictly to a consideration of consequences of the injuries occasioned by Goodson's acts and none other.

The direction by the court of the jury's attention to elements of damages in issue as raised by the pleadings and the proof has been an accepted practice in Texas from an early day. Gulf, C. & S. F. Ry. Co. v. Styron, 66 Tex. 421, 1 S.W. 161. The elements of damage in the present case were narrowed by the proof to men-

tal and physical pain and suffering, to the loss of teeth, and to disfigurement. The court's charge assisted the jury by narrowing its deliberations to these evidence-raised elements. There was no error in that action.

The jury had in effect been limited, as has been observed, to damages flowing from the acts of the company's agent and none other. Accordingly, the part of the charge allowing the jury to consider the 'reasonable present cash value to the plaintiff of the loss of his teeth' must be construed in the light of the limitation previously given by the court. Certainly no juror would have had any reason to consider himself at liberty under this charge to assess damages for any loss not directly connected with the assault in question. And the omission of the phrase 'if any' after this particular instruction, words which of course might have been appropriately added, does not, under the circumstances obtaining here, require the conclusion that the charge is on the weight of the evidence.

As to the disfigurement, that element is a recoverable one. Southwestern Bell Tel. Co. v. Ferris, Tex.Civ.App., 89 S.W. 2d 229, error dismissed.

There was no such overlapping or blending of separate elements of damages in this charge as would reasonably be calculated to confuse the jury or lead it to assess damages twice for the same loss. The court's charge and the jury's consideration of it must be appraised in the light of ordinary reason and everyday experience. Distinctions which are too fine are apt to lead to needless perplexities and purely legalistic results. This charge does not, when tested by reason and the precedents, subject the company to any liability not compensable at law. We conclude that none of the grounds upon which the company criticizes the charge is reasonably calculated to have injuriously affected its substantial rights. Rule 434, Texas Rules of Civil Proce-

dure; American Nat. Bank of Austin v. Sheppard, Tex.Civ.App., 175 S.W.2d 626, error refused want of merit.

The case of International-Great Northern Ry. Co. v. King, Tex.Com.App., 41 S.W.2d 234, is chiefly relied upon by the company for its insistence that there was error in this instruction. Besides charging that damages could be allowed for physical pain and mental anguish, the court in the King case instructed the jury it could also take into consideration many elements, including 'bodily injuries,' 'bodily inconvenience,' and decreased earning capacity, present and future. Five separate elements were tabulated in the charge, some overlapping others, and *the jury was instructed to and did assess damages separately for each of the five elements.* It was held that the instruction as a whole was confusing and misleading, and permitted the recovery of double damages. The case at bar is clearly different from and does not run counter to that case and the authorities it cites and follows.

The Court of Civil Appeals correctly held that the objections urged to the charge presented no reversible error." Emphasis added.

Under the facts of the two cases, we see no legal distinction between the elements of recovery permitted in *Felder* and those to which appellant objected in our case. John F. Buckner & Sons v. Allen, Tex.Civ. App., 289 S.W.2d 387, 393, n. w. h. See, also, Texas Electric Ry. v. Williams, Tex. Civ.App., 213 S.W. 730, n. w. h.; Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ. App., 66 S.W.2d 496, 501, rev. on other grounds in Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679; Willis v. Smith, Tex.Civ.App., 120 S.W.2d 899, wr. dism.; Southwestern Bell Telephone Co. v. Ferris, Tex.Civ.App., 89 S.W.2d 229, wr. dism.; Riley v. Norman, Tex.Civ.App., 275 S.W. 2d 208, wr. ref. n. r. e.; Mikell v. La Beth,

Tex.Civ.App., 344 S.W.2d 702, wr. ref. n. r. e.

Appellant's 8th point is overruled.

Judgment affirmed.